# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

ROBERT LYNCH,                    )
                                 )
                    PLAINTIFF    )
                                 )
v.                               )          No. 2:11cv70-DBH
                                 )
JOAN L. CHRISTIE, ET AL.,        )
                                 )
                    DEFENDANTS   )

## DECISION AND ORDER ON MOTIONS TO DISMISS
## AMENDED COMPLAINT

Robert P. Lynch has filed this lawsuit against Joan L. Christie for defamation and wrongful use of civil proceedings.[1] Lynch's lawsuit is based upon an earlier federal lawsuit that Christie brought against Lynch, plus later web-based statements that Christie made. Christie now has filed a special motion under Maine's anti-SLAPP (Strategic Lawsuits Against Public Participation) Act, 14 M.R.S.A. § 556, claiming that, in all her statements and the earlier lawsuit, she was exercising her constitutional and statutory right to petition governmental institutions. On that basis, she seeks to dismiss Lynch's lawsuit at the outset. She also filed a 12(b)(6) motion for failure to state a claim upon which relief can be granted. After oral argument on August 23, 2011, I **DENY** both motions. On the first, Lynch has made a powerful showing that Christie's earlier lawsuit and her later web-based statements were "devoid

---

[1] Jurisdiction is based upon diversity of citizenship. There are two other party defendants, but they are not involved in the motions being decided here.

of any reasonable factual support . . . and that [Christie's] acts caused actual injury to [Lynch]." 14 M.R.S.A. § 556. On the second, the Amended Complaint survives the 12(b)(6) test.

<h1 align="center">BACKGROUND[2]</h1>

Lynch is a chiropractor practicing in South Portland Maine. Redacted Verified Compl. ¶ 12 (Docket Item 1). Christie is a resident of Florida, but maintains a second home in Scarborough Maine. Id. ¶ 8. On June 12, 2009, Christie, aged 77, obtained chiropractic services from Lynch. Lynch Aff. ¶¶ 2-3, Ex. 2 to Pl.'s Resp. to Def.'s Mot. to Dismiss under 14 M.R.S.A. § 556 (Docket Item 38-2). She returned for more services on June 15. Id. ¶ 10; Christie Dep. at 60, Ex. 2 to Mem. of Law in Support of Special Mot. to Dismiss (Docket Item 32-2). The parties disagree on whether she returned on June 17. Lynch Aff. ¶¶ 11-13; Christie Dep. at 76, Ex. 4 to Pl.'s Resp. to Def.'s Mot. to Dismiss under 14 M.R.S.A. § 556 (Docket Item 38-4). Christie demonstrated unhappiness at the June 12 appointment over a required co-pay for the initial

---

[2] As 14 M.R.S.A. § 556 directs for the anti-SLAPP motion, I take this information from the "pleading," and the affidavits. Identifying the "pleading" here is unnecessarily complicated. Lynch filed both a Verified Complaint, and a Redacted Verified Complaint; he attached exhibits only to the second. Later he filed a First Amended Complaint and a Redacted First Amended Complaint, and attached no exhibits to either. Christie's motion is to dismiss the First Amended Complaint. But in response, Lynch refers to both the Verified Complaint and the exhibits. As a result, I must refer to at least three versions of the complaint. In the Fifth Circuit, the initial Verified Complaint would be treated as a nullity after the First Amended Complaint was filed. See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("second amended complaint is the only effective complaint, and because it is unverified, it does not constitute competent summary judgment evidence"). The thrust of more recent caselaw, however, is to permit consideration of the earlier versions. See, e.g., Bechler v. Macaluso, No. 08-3059, 2010 U.S. Dist. LEXIS 48094, at *3 n.1 (D. Or. May 14, 2010) (considered original verified complaint as an affidavit because amended complaint filed in response to court's order); Boxdorfer v. Thrivent Financial for Lutherans, No. 09-109, 2009 U.S. Dist. LEXIS 69636, at *5 n.2 (S.D. Ind. Aug. 10, 2009) (considered original verified complaint for evidentiary purposes because it is "still a signed statement of facts equivalent to an affidavit"); Hafner v. Limoges, No. 06-4039, 2008 U.S. Dist. LEXIS 9346, at *6-7 (D.S.D. Feb. 5, 2008) (same). Since one of the goals of section 556 is to avoid delay, I have not ordered the plaintiff to refile a single document.

consultation visit, not covered by Medicare insurance. Walker Aff. ¶ 5, Ex. 3 to Pl.'s Resp. to Def.'s Mot. to Dismiss under 14 M.R.S.A. § 556 (Docket Item 38-3). In late July Christie told friends and then reported to the South Portland Police Department that Lynch had sexually assaulted her in his office on June 15. Redacted Verified Compl. ¶¶ 34, 35. The police conducted an investigation. Letter from Cumberland County District Attorney, Ex. B to Redacted Verified Compl. (Docket Item 1-2). She also made the accusation to the Maine Board of Chiropractic Licensure. Letter from Bd. of Chiropractic Licensure, Ex. A to Redacted Verified Compl. (Docket Item 1-1). On December 3, 2009, the Board of Chiropractic Licensure voted to dismiss Christie's complaint for "Lack of or insufficient evidence of any violation of law or rule." Letter from Bd. of Chiropractic Licensure, Ex. A to Redacted Verified Compl. Later that month, Christie filed a civil lawsuit in this federal court against Lynch, claiming assault and battery, false imprisonment, and intentional infliction of emotional distress, all based on the alleged sexual assault. Redacted Verified Compl. ¶ 53. In January 2010, the Cumberland County District Attorney wrote Christie's then lawyer that, after reviewing the police investigation, she was declining prosecution:

> The reason is that none of [Christie's] allegations can be substantiated; in fact, they are contradicted by the records and statements of Dr. Lynch and his employees and by the physical nature of his offices. Furthermore, Officer Linda Barker observed Ms. Christie engaging in physical activity which she denies and claims to be unable to perform because of the injuries she sustained.

Letter from Cumberland County District Attorney, Ex. B to Redacted Verified Compl.; Redacted Verified Compl. ¶ 59. Discovery was completed in the then-

pending federal civil case and it was placed on an October 4, 2010, trial list. Redacted Verified Compl. ¶ 60. On September 3, 2010, by stipulation Christie dismissed her lawsuit against Lynch voluntarily, *with* prejudice and without costs. Id. ¶ 61.

In the succeeding months, Christie engaged the two other defendants in this lawsuit to register and develop content for a website that went live on January 6, 2011. Id. ¶¶ 62-64. She published on it an entry, "South Portland Maine Chiropractor—One Woman's Story of Sexual Abuse," with statements about the alleged sexual assault by Lynch, but without revealing Lynch's name.[3] Id. ¶¶ 65-70. She also published Facebook page entries to the same effect. Id. ¶ 71. In February 2011 in response to a reader comment, the website published an entry stating it would give the name of the chiropractor in response to a contact form and it did reveal Lynch's name to at least one of his patients who inquired. Id. ¶¶ 76-79. Another patient saw the website and asked Lynch who the chiropractor was. Id. ¶ 80. Lynch felt obliged to respond honestly to his patient and disclose that it was he. Id. ¶ 81. Lynch was so distressed by the accusations that he sought professional counseling and expended money for that purpose as well as attorney fees in defending the civil lawsuit before Christie dismissed it. Lynch Aff. ¶¶ 18-19.

In this, the current lawsuit, Lynch has sued Christie and her internet support people for defamation. Redacted First Am. Compl. ¶¶ 6-8; 85-102 (Docket Item 19). He has sued Christie alone for the Maine common law tort of

---

[3] Christie does not actually concede that she was involved in these efforts, but argues that if she was, the anti-SLAPP statute protects her.

wrongful use of civil proceedings.[4]  Id. ¶¶ 103-107.  Lynch seeks compensatory

damages, punitive damages, attorney fees and injunctive relief against all.

**ANALYSIS**

**A.    *Anti-SLAPP Motion***

Christie alone has moved to dismiss all claims against her under Maine's

Anti-SLAPP statute, 14 M.R.S.A. § 556. It provides:

> When a moving party [here, Christie] asserts that the civil
> claims, counterclaims or cross claims against the moving
> party are based on the moving party's exercise of the
> moving party's right of petition under the Constitution of
> the United States or the Constitution of Maine, the moving
> party may bring a special motion to dismiss.  The court
> shall advance the special motion so that it may be heard
> and determined with as little delay as possible.  The court
> shall grant the special motion, unless the party against
> whom the special motion is made [here, Lynch] shows that
> the moving party's exercise of its right of petition was
> devoid of any reasonable factual support or any arguable
> basis in law and that the moving party's acts caused actual
> injury to the responding party. In making its determination,
> the court shall consider the pleading and supporting and
> opposing affidavits stating the facts upon which the liability
> or defense is based.

Id.  Christie says that all her challenged statements and activities are covered

under the statute's protection of the right to petition.  Mem. of Law in Support

of Special Mot. to Dismiss at 1 (Docket Item 32).

**(1)    *The Scope of Petitioning Activity that Maine's Anti-SLAPP Statute
Covers.***

Section 556 is concerned with protecting citizens' exercise of their right

to petition under the United States and Maine Constitutions.  It gives a

comprehensive definition of the petitioning rights it protects.  Of relevance to

---

[4] There are other counts, but they have to do with remedy or vicarious liability and do not alter
the two underlying tort claims.

this case, it states that "'a party's exercise of its right of petition' means any written or oral statement . . . submitted to a . . . judicial body" or "in connection with an issue under consideration or review by a . . . judicial body" or a "statement reasonably likely to encourage consideration or review of an issue by a . . . judicial body" or a "statement reasonably likely to enlist public participation in an effort to effect . . . consideration" by a legislative, executive or judicial body. 14 M.R.S.A. § 556. Both the Maine Law Court and the First Circuit have described the policies and purposes behind the statute, <u>Godin v. Schencks</u>, 629 F.3d 79, 80 (1st Cir. 2010), <u>Morse Brothers, Inc. v. Webster</u>, 772 A.2d 842, 846 (Me. 2001), and I will not repeat them here. I follow the First Circuit's teachings in <u>Godin</u> that section 556 governs federal proceedings.[5]

Lynch appropriately concedes that the statutory definition encompasses Christie's earlier civil lawsuit in this court.[6]   Pl.'s Resp. to Def.'s Mot. to Dismiss under 14 M.R.S.A. § 556 at 2 (Docket Item 38).   But he maintains that it does not include Christie's webpage and Facebook activities.   <u>Id</u>.   Because Christie commenced those activities after finally dismissing her lawsuit with prejudice, she cannot maintain that they have any connection to pursuing her case before a judicial body.   Christie nevertheless argues that her web-based activities are "reasonably likely to enlist public participation in an effort to

---

[5] Applying it is not without difficulty, however.  For example, it seems doubtful that the Maine legislature's policies about which cases in court deserve priority ("The court shall advance the special motion so that it may be heard and determined with as little delay as possible") apply to federal courts where Congress has its own ideas about which cases deserve priority.  <u>See, e.g.</u>, Speedy Trial Act, 18 U.S.C. § 3161, and Title VII, 42 U.S.C. § 2000e-5(f)(2).  The First Circuit has also recognized the possible jury trial concerns in the statute, <u>Godin</u>, 629 F.3d at 90 n.18, but thought that they could be overcome.

[6] No issue is made of Christie's reports to the South Portland Police Department or the Maine Board of Chiropractic Licensure, but they would clearly be covered as well.

effect consideration" by some governmental body, yet she points to no such effort underway following her dismissal of the lawsuit. Mem. of Law in Support of Special Mot. to Dismiss at 12-13. The website does say: "I'm certain there must be many more victims of this sexual predator out there and more to come unless he is stopped. Thank you for taking the time to read my story of being sexually abused by a chiropractor in South Portland Maine. If you have also been sexually abused by a chiropractor in South Portland Maine, or in another area, we wish to hear from you . . . to hear your story . . . to share it . . . and to help bring proper punishments to the attacker." Website Story, Ex. 5 to Mem. of Law in Support of Mot. to Dismiss Amended Compl. (Docket Item 30-5). Under a broad reading of the statute, arguably that is a statement "reasonably likely to enlist public participation in an effort to effect . . . consideration" by some governmental body in the future.[7] <u>See</u> 14 M.R.S.A. § 556. Without resolving that state law issue finally, I will assume that the web-based statements qualify for purposes of this opinion.[8]

> **(2)** ***Standard of Review With Respect to (a) the Factual Support for Christie's Challenged Activities and (b) Actual Injury to Lynch.***

Since I am treating Christie's activities as within the statutory definition of petition, the burden shifts to Lynch to show that Christie's petitioning

---

[7] Such a broad construction would enable internet defamation to escape liability merely by adding a sentence enlisting others to seek some kind of governmental action.

[8] This is not like <u>Maietta Const., Inc. v. Wainwright</u>, 847 A.2d 1169, 1173 (Me. 2003), where published communications to newspapers were aimed at influencing the outcome of a contractual dispute between the City of South Portland and a contractor, or a portion of <u>Schelling v. Lindell</u>, 942 A.2d 1226, 1230 (Me. 2008), where a letter to the editor was "arguably intended to effect reconsideration of purchasing requirements by the Legislature, and to enlist public support to that end." It is closer to that portion of <u>Lindell</u> where the court said the definition is "broad enough to encompass activities related to matters not currently pending before a legislative body." <u>Id.</u> at 1231.

activities were "devoid of any reasonable factual support or any arguable basis in law and that [Christie's] acts caused actual injury to [Lynch]." 14 M.R.S.A. § 556. The parties dispute only the "reasonable factual support" and the "actual injury" components, not the "arguable basis in law" component. I proceed accordingly.[9]

The plain language of section 556 suggests a fact-finding role for the trial judge ("The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its *determination*, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based." 14 M.R.S.A. § 556 (emphasis added)). If that were my role, I would find on this record that Christie's statements were devoid of any reasonable factual support. But Maine's Law Court has said explicitly that summary judgment proceedings are the proper procedural model here. Morse

---

[9] Christie does quote the "arguable basis in law" language, Mem. of Law in Support of Special Mot. to Dismiss at 10, but there is no argument over the legal basis for Christie's activities. Sexual assault is clearly illegal, subject to criminal penalties, civil recovery, and professional discipline. Some commentators have argued that the Law Court has suggested that a plaintiff like Lynch must prove both that Christie had no reasonable factual support for her actions and that she had no arguable basis in law for them. John G. Osborn & Jeffrey A. Thaler, *Feature: Maine's Anti-SLAPP Law: Special Protection Against Improper Lawsuits Targeting Free Speech and Petitioning*, 23 Maine Bar J. 32, 37 (2008) (citing Maietta, 847 A.2d at 1173)). I am doubtful that the Law Court's language extends that far. A petitioning party might lie willfully and flagrantly about the facts, but state the law correctly as it applies to those false facts. It would make no sense to say that the petitioning activity is protected in such circumstances. Instead, the logical formulation comes from Protect Our Mountain Environment, Inc. v. District Court, 677 P.2d 1361, 1369 (Colo. 1984) (POME), the seminal case for anti-SLAPP statutes: "the defendant's administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion."

<u>Bros., Inc. v. Webster</u>, 772 A.2d 842, 848-49 (Me. 2001). In summary judgment proceedings judges do not find facts and a fact-finding role could raise serious constitutional right-to-jury-trial issues in federal court.[10]

Nevertheless, it is somewhat difficult to apply the summary judgment model, because the Law Court has also said both that the trial judge must view the evidence "most favorably to the moving party," and that appellate review of what the trial judge does is for abuse of discretion, <u>Morse Bros.</u>, 772 A.2d at 849, both of which are the exact opposite of how summary judgment practice operates in federal court.[11] And unlike summary judgment, the Law Court has also said that a plaintiff must "produce *prima facie evidence* of actual injury,[12] <u>Lindell</u>, 942 A.2d at 1228 (emphasis added), and that the trial court's legal conclusion "must be supported by pleadings and evidence that *demonstrate clearly* that [the petitioning activity] was 'devoid of any reasonable factual support or any arguable basis in law.'" <u>Morse Bros.</u>, 772 A.2d at 850 (emphasis added).[13] In the face of the uncertainty created by these various

---

[10] <u>See</u> note 5 <u>supra</u>.

[11] Some commentators say that this is a "converse summary judgment-like standard" and approve it on the basis that any admissible evidence in the moving party's favor must demonstrate that the nonmoving party cannot show that the petitioning activity was devoid of factual support. John G. Osborn & Jeffrey A. Thaler, *Feature: Maine's Anti-SLAPP Law: Special Protection Against Improper Lawsuits Targeting Free Speech and Petitioning*, 23 Maine Bar J. 32, 37 (2008). If that were correct, any defendant could succeed on a special motion under anti-SLAPP merely by filing a false affidavit, and there would be no way around it. Of course false affidavits can be filed to defeat summary judgment, but the result is to move the case to trial where the jury can decide the facts. Here, the result would be to prevent trial, and no one would ever decide the facts.

[12] At oral argument, Christie's lawyer argued that the same standard (the prima facie standard that the Law Court articulated in <u>Lindell</u>) applies to both the actual injury and reasonable factual support prongs.

[13] For the latter statement it quoted a summary judgment case. But in summary judgment the moving party must demonstrate the absence of any genuine issue of material fact, and failure to do so results in trial, where a jury can decide what happens. Here, the consequence is *no trial*, and therefore conflicting evidence hardly seems the proper foundation for that result.

formulations, I have looked at the out-of-state cases that the Law Court cited in adopting its summary judgment analog.[14]  Generally, those cases say that the plaintiff, the non-moving party, must provide evidence at some level of persuasion that he or she can show the absence of factual support for the defendant's petitioning statements.  Protect Our Mountain Environment, Inc. v.

---

[14] In the California case the Maine court cited, Church of Scientology v. Wollersheim, 49 Cal. Rptr. 2d 620 (Cal. Ct. App. 1996), the California court said that the plaintiff must make "a prima facie case"—"a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor."  Id. at 631.  It must be a "reasonable probability" and "[i]n order to preserve the plaintiff's right to a jury trial the court's determination of the motion cannot involve a weighing of the evidence."  Id. at 636.  That sounds like traditional summary judgment, not viewing the evidence in the light most favorable to the *moving* party.  But the California statute was different from Maine's.  It shifted the burden to the plaintiff to establish "that there is a probability that the plaintiff will prevail on the claim."  Id. at 635.  In the Rhode Island case the Maine Law Court cited, the court applied traditional summary judgment analysis and found that the defendant's evidence of petitioning activity was uncontradicted and therefore she was entitled to summary judgment.  Hometown Properties v. Fleming, 680 A.2d 56, 64 (R.I. 1996).  Once again the statute was different.  The Rhode Island court noted that the legislature had removed the "special motion" provision that had called for a preponderance of the evidence standard, and had replaced it legislatively with the ambiguous description of an "appropriate motion."  Id. at 63-64.  The Rhode Island Supreme Court held that under that language, a defendant's anti-SLAPP motion was to be treated as a summary judgment motion.  Id.  In Massachusetts, the Massachusetts Supreme Judicial Court dealt with a statute almost identical to Maine's.  But the Massachusetts court was troubled by the drafting of the statute and constitutional issues, and ultimately construed the Massachusetts statute to "exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated.  The special movant who 'asserts' protection for its petitioning activities would have to make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities *alone* and have no substantial basis other than or in addition to the petitioning activities."  Duracraft Corp. v. Holmes Prods. Corp., 691 N.E.2d 935, 943 (Mass. 1998) (emphasis added).  Only then does the burden shift to the nonmoving party.  Id.  Then the burden is on the plaintiff to "make a sufficient showing to permit the court to reasonably conclude that the defendant's petitioning activities were not immunized from liability under the First Amendment because: (1) the defendant's administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion;. . . ."  Id. at 942 n.16.  The Massachusetts court adopted its standard from Protect Our Mountain Environment, Inc. v. District Court, 677 P.2d 1361 (Colo. 1984) (POME), a Colorado decision made in the absence of any state statute.  Duracraft, 691 N.E.2d at 942 n.16.  Some Massachusetts commentators say that standard is like that of a motion for preliminary injunction and "the plaintiff must offer a preponderance of evidence that the claim against him was devoid of reasonable legal or factual support.  If the plaintiff is unable to make this showing up front, then the case is at an end.  But if the heightened overlay of the Anti-SLAPP statute is met, the case can move forward."  Richard J. Yurko & Shannon C. Choy, *Legal Analysis: Reconciling the Anti-SLAPP Statute with Abuse of Process and other Litigation-Based Torts*, 51 Boston Bar J. 15, 18 (2007).  Thus, these cases do not support a converse summary judgment standard such that any evidence by the defendant results in dismissal.

<u>District Court</u>, 677 P.2d 1361, 1369 (Colo. 1984) (POME) ("sufficient showing to permit the court to reasonably conclude"); <u>Duracraft Corp. v. Holmes Prods. Corp.</u>, 691 N.E.2d 935, 942 n.16 (Mass. 1998) (same). None of them requires that the defendant be believed at all costs. After reviewing all the cases, I cannot determine with certainty what the Maine Law Court standard of review is.[15] First, therefore, I look at the evidence and then I will assess what standard(s) it meets or fails to meet.

*(a)* ***"Devoid of any reasonable factual support"***

I conclude that Lynch is highly likely to persuade a jury that Christie fabricated her story. Lynch has affidavits of what his office staff saw and heard (and didn't see and hear, in the face of Christie's claim that on June 15 she was screaming out loud and that she ran from the office), all of which contradict Christie; contemporaneous office records that contradict some of Christie's statements and reflect an additional return visit for chiropractic services after the alleged sexual assault;[16] the negative results of the South Portland police investigation that included testing as to what could be seen and heard in Lynch's office suite; the Cumberland County District Attorney's negative assessment and decision; the Maine Board of Chiropractic Licensure's negative decision; and Christie's unexplained decision to dismiss her civil case with prejudice on the eve of trial. Against that is only Christie's word, sworn under oath at her deposition in the civil suit, but a suit that she then

---

[15] In <u>Godin</u>, the First Circuit noted that Section 556 is "a relatively young statute, not much construed by the state courts." 629 F.3d at 90 n.18.

[16] After review of medical records, Medicare accepted the charge for the third visit.

dismissed without explanation (then or now) on the eve of trial, with prejudice.[17]

I conclude that Lynch has made a prima facie case (Lindell, 942 A.2d at 28; Church of Scientology v. Wollersheim, 49 Cal. Rptr. 2d 620, 631 (Cal. Ct. App. 1996)); that the evidence demonstrates clearly that Christie's statements were devoid of any reasonable factual support (Morse Brothers, 772 A.2d at 850); and that Lynch has made a sufficient showing to permit the court reasonably to conclude that Christie's petitioning activities were devoid of reasonable factual support (Duracraft, 691 N.E.2d at 942 n.16). Only if Christie's account *must* be believed for purposes of her special motion (the converse summary judgment standard) would I grant the motion. That, I conclude, would interfere with the right to jury trial, because Lynch has overwhelming contrary evidence that contradicts Christie's account.

### (b)     *Whether Christie's "acts caused actual injury to" Lynch*

The Law Court has made clear that, faced with a special motion under anti-SLAPP, a plaintiff like Lynch must show that Christie's petitioning acts

---

[17] I recognize that all the anti-SLAPP cases that the Law Court has discussed were dismissed by the Law Court, either affirming a trial court dismissal or overruling a trial court failure to dismiss. But each was very different from this case. In Maietta, the plaintiff admitted that it had undertaken the criticized activity (loam removal from certain property) and the issue was motive (the plaintiff claimed it removed loam from the property only to protect children). 847 A.2d at 1172 n.1. In Lindell, the plaintiff presented no evidence of actual injury, and the Law Court did not reach the issue of whether the petitioning activity was devoid of reasonable factual support. 942 A.2d at 1233-34. In Morse Brothers, the plaintiff admitted that one of the challenged appeals had merit, on another the plaintiff had only aggressive statements by the defendants' lawyer, on a third the trial court had found the defendants' position "not frivolous," but as raising "legitimate concerns," and on a fourth the trial court had never reached the merits but ruled only on standing. Thus the Law Court concluded that the plaintiff had not shown that the defendants' actions were "devoid of any reasonable factual support or any arguable basis in law." 772 A.2d at 850-52. I am aware of one unpublished decision, Copp v. Liberty, Nos. 09-353, 09-354, Mem. 10-2, 2010 Me. Unpub. LEXIS 3, at *2 (Me. Feb. 2, 2010), where the Law Court affirmed a partial denial of an anti-SLAPP motion, but it is very terse.

caused him "actual injury," and that "actual injury" means "affirmative evidence of an injury." Maietta, 847 A.2d at 1174. Presumed damages, as in defamation per se, slander related to one's trade or business, or injury to reputation, will not suffice. Id. Moreover, "the record must contain evidence from which damage in a definite amount may be determined with reasonable certainty." Lindell, 942 A.2d at 1231 (quoting Maietta, 847 A.2d at 1173-74). A "claimed loss of sleep, mental suffering, and embarrassment are not legally sufficient." Lindell, 942 A.2d at 1232. Here, Lynch has shown that because of the distress Christie's actions caused him, he spent $870 for professional counseling, $580 after the lawsuit was filed but before the website went up, $290 thereafter. Lynch Aff. ¶ 18 (Docket Item 38-2). That meets the Lindell requirement of "a reasonably certain monetary valuation of the injury [he] has suffered." 942 A.2d at 1231.[18]

But the amounts Lynch expended are based upon emotional injury. The Law Court also has spoken to that component. "[M]inor emotional injuries, such as hurt feelings, are not compensable." Id. at 1233. "[E]motional distress alone is not compensable unless it is 'so severe that no reasonable person could be expected to endure it.'" Id. (quoting Curtis v. Porter, 784 A.2d 18, 23 (Me. 2001)). "Stress, humiliation, loss of sleep, and anxiety occasioned by the events of every day life are endurable." Id. Serious mental distress amounting to actual injury that is compensable occurs only "where a reasonable person[,] normally constituted, would be unable to adequately cope with the mental

---

[18] I do not at this stage decide whether attorney fees that Lynch incurred in the first lawsuit may be recoverable.

stress engendered by the circumstances of the event." Id. (quoting Culbert v. Sampson's Supermarkets, Inc., 444 A.2d 433, 437 (Me. 1982)).

I conclude that to be falsely accused of sexual assault, an accusation of criminal behavior destructive of family relationships and professional standing and privileges, meets that standard. It is not an "event[ ] of everyday life." See Lindell, 942 A.2d at 1233.

In sum, I conclude that Lynch has powerful evidence that Christie's earlier lawsuit and her statements on the website and Facebook were devoid of any reasonable factual support and that they actually caused him injury. As a result, the Anti-SLAPP statute does not support Christie's special motion to dismiss, and I **DENY** the motion. I also **DENY** Christie's related motion for costs and attorney fees.

**B.    *Separate Motion to Dismiss under Rule 12(b)(6)***

Christie has also filed an ordinary motion to dismiss Lynch's defamation and wrongful use of civil proceedings claims under Fed. R. Civ. P. 12(b)(6).

As for defamation, Christie claims that her statements are absolutely privileged because they are related to a legal proceeding, see Dineen v. Daughan, 381 A.2d 663 (Me. 1978); that they were compulsory counterclaims in the earlier federal lawsuit and are forfeited because they were not asserted there, Fed. R. Civ. P. 13; and that the web-based statements do not identify Lynch by name and he has not alleged sufficient facts to show that readers would know that her statements concerned Lynch. Mem. of Law in Support of Mot. to Dismiss Amended Compl. at 1-2 (Docket Item 30).

The motion to dismiss the defamation claim is **DENIED**. Lynch's defamation claim is not for the statements made in litigation but for the statements Christie made in her web-based activities. These statements are not protected by Maine's judicial proceedings privilege. The defamation claim was not a compulsory counterclaim in the earlier lawsuit because the web-based statements that Lynch claims were defamatory had not even occurred when the earlier lawsuit was dismissed with prejudice. <u>See</u> Fed. R. Civ. P. 13(a) ("A pleading must state as a counterclaim any claim that—*at the time of its service*—the pleader has against an opposing party . . .") (emphasis added). The allegations of the Amended Complaint are also sufficient to show that readers would know that the statements were about Lynch. The Complaint alleges that one of Lynch's patients contacted the website and obtained his name as the chiropractor who is the subject of the website. Redacted Am Compl. ¶¶ 77-79 (Docket Item 19).[19] It also alleges that a patient told Lynch about the allegations of the website and asked him which South Portland chiropractor the website was about and that Lynch felt compelled to answer his patient's inquiry truthfully. <u>Id</u>. ¶¶ 80-81.[20] It also alleges that simple web searches would connect the anonymous story with the lawsuit as reported to the public through PACER and another service. <u>Id</u>. ¶¶ 88-92.

---

[19] This satisfies Maine law of defamation. <u>See</u> <u>Robinson v. Guy Gannett Publ'g Co.</u>, 297 F. Supp. 722, 726 (D. Me. 1969) ("Although it is not necessary that the publication on its face mention the plaintiff by name, if its application to the plaintiff depends upon extrinsic circumstances, he must show that it was actually understood as referring to him.").

[20] This also satisfies Maine law of defamation. <u>See</u> <u>Carey v. Mt. Desert Island Hosp.</u>, 910 F. Supp. 7, 13 (D. Me. 1995) (holding that Maine would recognize the doctrine of compelled self-publication).

As for wrongful use of civil proceedings, Maine has adopted the Restatement (Second) of Torts § 674 formulation for that common law tort. Pepperell Trust Co. v. Mountain Heir Financial Corp., 708 A.2d 651, 656 (Me. 1998); Palmer Dev. Corp. v. Gordon, 723 A.2d 881, 883 (Me. 1999); JACK H. SIMMONS, DONALD N. ZILLMAN & DAVID G. GREGORY, MAINE TORT LAW § 3:02-3:03 (2004 ed.). The elements for the tort are an earlier civil lawsuit (1) without probable cause; (2) "with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based"; and (3) termination of the earlier lawsuit in favor of the person now bringing the common law tort claim. Palmer Dev. Corp., 723 A.2d at 883. Christie's argument is that Lynch has not sufficiently alleged the second element. Mem. of Law in Support of Mot. to Dismiss Amended Compl. at 14-15. She argues that Lynch must identify an improper primary purpose for her earlier lawsuit that is plausible.[21] Id. Lynch has asserted that Christie had a primary purpose "other than that of securing the proper adjudication of the claim in which the proceedings were based." Redacted Am Compl. ¶ 105. Given all the other allegations concerning the extensive reasons to disbelieve Christie's assertions in her earlier lawsuit and her unexplained dismissal of the lawsuit with prejudice on the eve of trial, I conclude that Lynch's negative allegation is sufficient under the pertinent common law element. Christie has not cited any caselaw holding that Lynch is required to identify *the* primary improper purpose Christie had, rather than prove the negative, that proper adjudication

---

[21] Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) have focused lawyers on the adjectives "plausible" and "implausible."

was *not* her primary purpose.[22]  Moreover, as my colleague Judge Singal observed in <u>Shapiro v. Haenn</u>, 222 F. Supp. 2d 29, 45 (D. Me. 2002) this second factor involves a fact-intensive inquiry.  It can be better addressed at summary judgment or at trial upon a more complete record.

I **Deny** the motion to dismiss the wrongful use of civil proceedings claim.

The defendant Christie's 12(b)(6) motion is **DENIED** in its entirety, as is her anti-SLAPP motion.

**SO ORDERED.**

**DATED THIS 7TH DAY OF SEPTEMBER, 2011**

/s/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[22] Christie argues that Lynch's complaint suggests the *implausible* primary purpose that she was trying to avoid making a $60 co-pay.  Mem. of Law in Support of Mot. to Dismiss Amended Compl. at 14-15.  Although the Amended Complaint does not actually identify the co-pay as the primary reason for the wrongful use of civil proceedings claim in Count II, the wrongful use of civil proceedings tort, Lynch does advance that argument in his legal memorandum.  Pl.'s Objection to Def.'s Mot. to Dismiss under Rule 12(b)(6) at 15 (Docket Item 35).  But I conclude that Lynch is required to show only that proper adjudication was not the primary purpose.