## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT P. LYNCH, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | No. 2:11cv70-DBH |
| | ) | |
| JOAN L. CHRISTIE, ET AL., | ) | |
| | ) | |
| DEFENDANTS | ) | |

## DECISION AND ORDER ON DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

The primary issues on this defense motion for summary judgment are whether the plaintiff can establish that (1) certain allegedly defamatory website publications were "of and concerning" him; (2) he suffered sufficient "actual injury" to defeat dismissal under Maine's anti-SLAPP[1] statute; and (3) the defendant brought an earlier lawsuit for an improper purpose.  I conclude that the plaintiff has sufficient evidence to withstand summary judgment and **DENY** the motion.

---

[1] Maine's anti-SLAPP statute, 14 M.R.S.A. § 556, is meant to deter "strategic lawsuits against public participation" and to protect citizens' exercise of their right to petition under the United States and Maine Constitutions.  See generally Godin v. Schencks, 629 F.3d 79, 80 (1st Cir. 2010); Morse Brothers, Inc. v. Webster, 772 A.2d 842, 846 (Me. 2001).  The statute defines the exercise of the right of petition broadly to include "any written or oral statement . . . submitted to a . . . judicial body" or "in connection with an issue under consideration or review by a . . . judicial body," a "statement reasonably likely to encourage consideration or review of an issue by a . . . judicial body," or a "statement reasonably likely to enlist public participation in an effort to effect . . . consideration" by a legislative, executive, or judicial body.  14 M.R.S.A. § 556.  Without deciding the issue, I assume that all of Christie's statements at issue in this case meet the statutory definition.

### Procedural Posture

On February 24, 2011, the plaintiff Robert Lynch sued the defendant Joan L. Christie[2] for defamation and wrongful use of civil proceedings, asserting diversity jurisdiction.  Compl. ¶ 9 (ECF No. 1).  On September 7, 2011, I denied Christie's motions to dismiss Lynch's amended complaint under Fed. R. Civ. P. 12(b)(6) and 14 M.R.S.A. § 556.  Decision and Order on Mots. to Dismiss Am. Compl. (ECF No. 43).  Christie filed an interlocutory appeal of my decision.  Interlocutory Appeal (ECF No. 48).  On June 25, 2012, the First Circuit remanded the case for further consideration in light of the Maine Law Court's intervening decision altering its interpretation of Maine's anti-SLAPP statute.  See Nader v. Maine Democratic Party, 41 A.3d 551 (Me. 2012).  After the close of discovery, Christie moved for summary judgment on the claim for wrongful use of civil proceedings, for partial summary judgment on the claim for defamation, and for dismissal (under Maine's anti-SLAPP statute) of any remaining defamation claim.  Def.'s Mot. for Summ. J. (ECF No. 86).

### Factual Background[3]

Before this lawsuit, on December 14, 2009, Christie sued Lynch, a chiropractor, alleging that he sexually assaulted her in one of his chiropractic treatment rooms on June 15, 2009.  Def.'s Statement of Material Facts ("DSMF") ¶ 1 (ECF No. 87); Pl.'s Statement of Material Facts and Resp. to Def.'s Statement of Material Facts ("Pl.'s Resp.") ¶ 1 (ECF No. 89).  After discovery was completed but before trial, Christie

---

[2] Lynch also named as co-defendants Steven Schwartz and Positive Design, Inc., but they have not joined this motion.

[3] The material facts are largely undisputed for purposes of the motion.  Where there is a dispute, I take the version most favorable to the plaintiff, Lynch, the non-moving party.  Christie has not responded to the additional facts submitted by Lynch in his Statement of Material Facts and Response to Defendant's Statement of Material Facts ("Pl.'s Resp.") ¶¶ 59-78 (ECF No. 89), and I treat them as admitted for purposes of the motion.  See Local Rule 56(d), (f).  For the same reason, I treat as admitted any additional facts provided by Christie in her affidavit (ECF No. 92-1) attached to her Reply to Plaintiff's Objection to Defendant's Motion for Summary Judgment.  (The parties explicitly contemplated such affidavits in their Stipulated Record.  J.A. Agreed Upon Summ. J. R. 1 (ECF No. 82).)

dismissed that earlier lawsuit with prejudice on September 3, 2010.[4]  DSMF ¶ 2; Pl.'s Resp. ¶ 2.  Then in November 2010, Christie hired co-defendants Steven Schwartz and Positive Design, Inc. to create a website and Facebook page.  DSMF ¶ 3; Pl.'s Resp. ¶ 3.  Both the Facebook page and the website[5] contained a first-person narrative of sexual assault by a chiropractor in South Portland[6] as told by an anonymous female victim.  DSMF ¶ 10; Pl.'s Resp. ¶ 10.  Neither the website nor the Facebook page referred to Lynch or anyone else by name.  DSMF ¶ 5; Pl.'s Resp. ¶ 5.

Two of Lynch's patients discovered that Lynch was the chiropractor accused of sexual assault on the web.  One patient, Randall Graves, viewed the website and emailed Schwartz (the web designer) to request the chiropractor's initials.  DSMF ¶ 16; Pl.'s Resp. ¶ 16.  After receiving authorization from Christie, who believed that the source of the inquiry was Lynch himself, Schwartz informed Graves in a private email that the accused chiropractor was Lynch.  DSMF ¶¶ 17, 22; Pl.'s Resp. ¶¶ 17, 22, 71.  Graves in turn forwarded the email to his girlfriend, also a patient of Lynch.  Pl.'s Resp. ¶ 74.  Graves subsequently showed the email to Lynch, who explained to him the circumstances.  DSMF ¶¶ 17-18; Pl.'s Resp. ¶¶ 17-18, 75.  The other patient, Carol Sobczak, mentioned the website to Lynch during an appointment and asked him which chiropractor the website was about.  DSMF ¶ 19; Pl.'s Resp. ¶¶ 19, 77.  Lynch

---

[4] Christie's Statement of Material Fact states that the complaint was dismissed on September 3, 2009, an apparent typographical error since the stipulation of dismissal in the record is dated September 3, 2010.  Ex. C (ECF No. 83-2).

[5] The website and Facebook page were interconnected, as Christie acknowledges in her Statement of Material Fact.  DSMF ¶ 8.  I refer to them as a single website at times in this opinion.

[6] Although neither party's statement of fact specifically points out that the website identified the perpetrator of the assault as a chiropractor in South Portland, this is readily apparent from the record, which contains printouts of the website.  Ex. F at 2-3, 6 (ECF No. 83-5).  Moreover, the legal memoranda submitted by both parties treat the website as referring to a chiropractor in South Portland.  See Def.'s Mot. for Summ. J. 5 n. 3 (quoting the website's reference to sexual abuse "by a chiropractor in South Portland, Maine"); Pl.'s Obj. to Def.'s Mot. for Summ. J. 7 (ECF No. 88) (noting that Randall Graves was concerned by the website because his girlfriend "also was a patient of a South Portland chiropractor").  I thus treat it as an undisputed fact that the website referred to a chiropractor in South Portland.

responded that the website statements were purportedly about him, and explained the situation further.  DSMF ¶ 20; Pl.'s Resp. ¶¶ 20, 78.

Christie told people in Maine and Florida that Lynch had sexually assaulted her.[7]  Pl.'s Resp. ¶¶ 67-68.  Christie also told people in both states that she had created a website about the assault.  Id. at ¶ 69.

Witnesses within earshot of Christie and Lynch during the alleged assault reported not having heard the screams that Christie claims to have emitted.  Id. at ¶ 59.  Contrary to Christie's claim that she ran out of the office after the assault, witnesses also reported that Christie stopped at the front desk to arrange another appointment with Lynch on June 17—an appointment that office records suggest that she kept.  Id. at ¶ 60.  The Cumberland County District Attorney's Office declined to pursue criminal charges against Lynch after investigation by the South Portland Police Department, which visited Lynch's office, observed its layout, and interviewed office staff.  Id. at ¶ 61.  The police obtained records and statements that contradicted Christie's allegations.  Id.  Christie's charges against Lynch were also rejected by the Maine Board of Chiropractic Licensure.  Id. at ¶ 62.

---

[7] While it is undisputed that Christie told people that she had been sexually assaulted, the parties disagree as to whether Christie specifically identified Lynch as her assailant.  DSMF ¶ 31, Pl.'s Resp. ¶¶ 31, 67-68.  Christie sometimes says that she is uncertain or can't remember what she said and to whom, and her language is sometimes vague or equivocal:  "I can't think of everybody.  I really can't.  I mean, I've told people down here who would never know who Dr. Lynch was, and I don't know that I even ever used his name.  Whether I did or not, I can't recall."  Christie Dep. 35:12-15, April 19, 2012, Ex. M (ECF No. 83-13).  Viewing the facts in the light most favorable to Lynch, the party opposing summary judgment, I find that there is enough evidence to go to a jury that Christie identified Lynch at least some of the times, and the jury need not believe other statements, such as her statement in her April 19, 2012, deposition that she "can't recall" whether she disclosed Lynch's identity.  Id. at 35:15.  Moreover, regardless of whether she named Lynch in any of these conversations, the record shows that Christie reported the incident to at least one individual who would recognize Lynch as the alleged perpetrator—Joan Lausier, Christie's neighbor in Scarborough, who had previously recommended Lynch to her.  Christie Dep. 37:23-25; 38:1-6; 90:9-22, May 17, 2010, Ex. N (ECF No. 83-14).

As a result of Christie's lawsuit and the accusatory website statements, Lynch experienced significant emotional distress.[8]  Id. at ¶ 66.   He worried about his professional reputation, finances and job; experienced constant fight or flight response; had difficulty sleeping, focusing and concentrating; and had other related reactions, many of which he reported to a treating psychologist.  Id. at ¶¶ 64-65.   In the wake of Christie's 2009 lawsuit and Internet publications, Lynch spent $870 on six visits to a psychologist.  DSMF ¶ 37; Pl.'s Resp. ¶ 37.  Four of those visits occurred after Christie filed her lawsuit but before the Internet publications; the other two, which cost a combined $290, occurred after Christie posted her narrative to the website.  DSMF ¶¶ 38-39; Pl.'s Resp. ¶¶ 38-39.

## ANALYSIS

Christie moves for summary judgment and/or to dismiss on a variety of grounds.  First, she argues that her anonymous Internet publications were not "of and concerning" Lynch, and argues that Lynch's defamation claim should accordingly be limited to the specific instances where Lynch was recognized as the anonymous chiropractor by Randall Graves and Carol Sobczak.  Def.'s Mot. for Summ. J. 6-12; Def.'s Reply to Pl.'s Obj. to Def.'s Mot. for Summ. J. 1-5 (ECF No. 92).  To the extent that Lynch also claims defamation arising from Christie's personal statements to friends and healthcare providers, Christie contends that Lynch did not adequately plead these claims in this lawsuit and that they also are barred by his failure to make them a counterclaim in the earlier lawsuit.  Def.'s Mot. for Summ. J. 10-12; Def.'s Reply to Pl.'s Obj. to Def.'s Mot. for Summ. J. 5-10.  Christie argues that in any event Maine's anti-SLAPP statute, 14 M.R.S.A. § 556, bars Lynch's defamation claim in its entirety because Lynch has failed to introduce evidence of "actual injury" resulting

---

[8] The PSMF actually says "severe emotional distress," but that term is not just a factual assertion, but also carries legal significance.

from Christie's allegedly defamatory publication.   Def.'s Mot. for Summ. J. 12-17; Def.'s Reply to Pl.'s Obj. to Def.'s Mot. for Summ. J. 10-12.   Finally, Christie argues that she is entitled to summary judgment on Lynch's claim for wrongful use of civil proceedings because Lynch has failed to provide admissible evidence that Christie brought her 2009 lawsuit for an improper purpose.   Def.'s Mot. for Summ. J. 17-21; Def.'s Reply to Pl.'s Obj. to Def.'s Mot. for Summ. J. 12-14.

### *Defamation*

Under Maine law, a defamatory statement must be "of and concerning" the plaintiff.   Hudson v. Guy Gannett Broad. Co., 521 A.2d 714, 716 (Me. 1987).   That requirement "is an essentially factual issue that will almost always be material in a libel case."   Hudson, 521 A.2d at 716.

Christie contends that Lynch is unable to establish this element of defamation because "there is no evidence that a reasonable reader, without additional information, would understand the website to be 'of or concerning' Lynch."   Def.'s Mot. for Summ. J. 7.   However, under Maine law, the proper test is not whether a hypothetical "reasonable reader" would understand a publication as referring to the plaintiff, but rather whether "at least one person" actually and reasonably interpreted it as such.[9]   Hudson, 521 A.2d at 717; cf. Restatement (Second) of Torts § 564 (1977)

---

[9] Christie appears to rely on Robinson v. Guy Gannett Pub. Co., 297 F. Supp. 722 (D. Me. 1969) for this "reasonable reader" standard.   Robinson states that the plaintiff "must show that [the publication] was *actually understood* as referring to him.   In this respect, the test is neither the intent of the author nor the recognition of the plaintiff himself that the article is about him, but rather the reasonable understanding of the recipient of the communication."   Id. at 726 (emphasis added) (citations omitted).   Robinson, in other words, requires that an actual recipient reasonably understand the publication as referring to the plaintiff, not that a hypothetical reasonable recipient would understand the reference.   Cf. Hudson, 521 A.2d at 717-18 (rejecting a similar "average reader" argument based on Maine caselaw and explaining that "[t]he 'average reader' inquiry [applied in prior cases] was directed at the meaning to assign certain words used in the article, not whether an 'average reader' could reasonably connect the article to a particular plaintiff") (citations omitted).   There is no question that Graves and Sobczak reasonably understood the website to refer to Lynch after they made their inquiries.

6

("A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands it as intended to refer.").  In this case, Lynch has introduced evidence that at least three people, Randall Graves, Carol Sobczak, and Graves's girlfriend, actually understood Christie's Internet publications to refer to Lynch.

Christie argues that Lynch nevertheless cannot establish that her publications were "of and concerning" Lynch, because Graves and Sobczak learned only through extrinsic communications that the website and Facebook page referred to Lynch. Def.'s Mot. for Summ. J. 7; Def.'s Reply to Pl.'s Obj. to Def.'s Mot. for Summ. J. 1-2. Maine's Law Court rejected a similar argument in <u>Hudson</u>, where the plaintiff's coworkers became aware that an allegedly defamatory broadcast referred to the plaintiff only when they learned subsequently from another source that the plaintiff was one of twelve unnamed employees mentioned in the broadcast.  "To satisfy the 'of and concerning' requirement," explained the <u>Hudson</u> court, "a recipient need not immediately connect the plaintiff with the broadcast.  Other information may be utilized by a recipient even if that information does not come from the broadcast itself."  521 A.2d at 718; <u>see also</u> <u>WJLA-TV v. Levin</u>, 564 S.E.2d 383, 390 (Va. 2002) ("[S]tatements or publications by the same defendant regarding one specific subject or event and made over a relatively short period of time, some of which clearly identify the plaintiff and others which do not, may be considered together for the purpose of establishing that the plaintiff was the person 'of or concerning' whom the alleged defamatory statements were made.  This is so even where the publication identifying the plaintiff is made subsequent to those that do not identify him.").

Under the <u>Hudson</u> standard, Lynch has sufficient evidence to reach a jury that the Internet publications were "of and concerning" him because he has evidence that both Sobczak and Graves (along with Graves's girlfriend) not only actually but also

reasonably understood the statements as referring to Lynch.[10]  Graves (and in turn his girlfriend) learned the anonymous chiropractor's identity from Steven Schwartz, the web designer, and Christie herself authorized Schwartz to disclose Lynch's name. Sobczak presents a more nuanced case: for her, the identification came not from the Christie or a third party, but rather from Lynch himself.  But a jury could find that, confronted with a patient's question about sexual abuse by an anonymous chiropractor in South Portland, Lynch could hardly be expected to lie.  Moreover, it could find that Christie should have foreseen that her online allegations might lead Lynch's patients to inquire if he was the chiropractor in question.[11]

---

[10] A plaintiff need show only that a single person understood the defamatory statement to be of and concerning him, but the understanding of additional people may be relevant to damages. The summary judgment motion practice does not present the additional issue raised in the First Amended Complaint, that "[a] simple Google search of each of the South Portland male chiropractors' names plus the word 'assault' reveals as the second result the Justia.com information for *Christie v. Lynch*," such that Lynch is readily identified as the anonymous South Portland chiropractor, First Am. Compl. ¶ 91 (ECF No. 19), and, therefore, Christie's argument that she "has no control over the availability of her 2009 Lawsuit on the internet," and that privilege for the lawsuit proceedings prevents this basis for defamation liability, Def.'s Mot. for Summ. J. 8 n. 5.

[11] In Weinstein v. Bullick, 827 F. Supp. 1193 (E.D. Pa. 1993), the court found the "of and concerning" element established where the plaintiff's identity was ascertainable as a result of her own statements *prior to* the anonymous defamatory publication.  In Weinstein, the plaintiff reported to the police that she had been abducted and raped, and told other students at Bryn Mawr College that she had been the victim of a rape.  The defendants then published the allegedly defamatory statement, a news broadcast that impugned the veracity of an *unnamed* Bryn Mawr College student's account of an abduction and rape.  The court found that the plaintiff had introduced sufficient evidence that the broadcasts were "of and concerning" her even though she herself had provided the information from which people inferred that she was the unnamed victim in the broadcast:  "Where a plaintiff has announced certain *non-defamatory* facts about herself, which later assist a reasonable recipient of *defamatory* remarks in identifying their subject, it is irrelevant that those non-defamatory facts came from her mouth."  Id. at 1201-02.

Lynch's self-identification in response to Sobczak's question is somewhat analogous to the compelled self-publication doctrine, which Maine's Law Court has not had occasion to recognize, although many years ago this federal court predicted that it would adopt that doctrine.  Carey v. Mt. Desert Island Hosp., 910 F. Supp. 7 (D. Me. 1995).  Under the doctrine of compelled self-publication, "courts inquire as to whether the [ ]defendant knew or could have foreseen that the plaintiff would be compelled to repeat the defamatory statement," id. at 11, allowing plaintiffs to obtain recovery for statements they themselves republished under foreseeable compulsion.  This contravenes the "long standing rule against imposing liability for the voluntary republication of actionable statements by the plaintiff."  Id. (citations omitted). Although the doctrine is subject to criticism and has been rejected by a number of states, see, e.g., White v. Blue Cross & Blue Shield of Mass., 809 N.E.2d 1034 (Mass. 2004); Cwiklinsky v.
*(continued next page)*

It appears that Lynch also seeks to recover for allegedly defamatory statements that Christie made to her friends and health care providers apart from the Internet.[12] Lynch's First Amended Complaint (ECF No. 19) certainly is susceptible of such a reading.  Paragraph 1 says that in addition to the internet publications, "Christie also communicated false and defamatory statements directly to individuals accusing Dr. Lynch of sexually assaulting her."  Paragraph 34 states that "on or around July 28, 2009, Christie informed several friends that she had been assaulted by Dr. Lynch in his office."  Paragraph 37 says that she reported the same to Orthopedic Associates in Portland, Maine.  Paragraph 95 says that Christie made false statements about Dr. Lynch "in communicating with friends and healthcare practitioners that on June 15, 2009, Dr. Lynch sexually assaulted her in his South Portland, Maine office."

At the time of her earlier motion to dismiss, Christie argued that Lynch's defamation claim in this case should be dismissed because it involves "witness statements" made in connection with the previous lawsuit, thereby protected by the judicial proceedings privilege, see Dineen v. Daughan, 381 A.2d 663, 664 (Me. 1978).

---

Mobil Chem. Co., 837 A.2d 759 (Conn. 2004), the concerns raised by voluntary republication are less pressing in this case.  Lynch did not *republish* Christie's statement but merely identified himself as the accused chiropractor in circumstances where he could not avoid the identification short of lying or equivocating.  Furthermore, the concern that in the usual context of employment the doctrine "makes it impossible for an employer to communicate his grounds for discharging an employee to the employee even confidentially without incurring a grave risk of being sued for defamation," Rice v. Nova Biomedical Corp., 38 F.3d 909, 912 (7th Cir. 1994), does not apply here.

[12] Christie attempts to distinguish her statements to friends in Florida from those to friends in Maine, arguing that because "Lynch does not live or work in Florida, he cannot show that any statements made by Christie to her friends in Florida proximately caused harm to his reputation in the business community in Maine."  Def.'s Mot. for Summ. J. 11.  Perhaps that distinction will become relevant if and when we reach the damages phase of this lawsuit.

Christie further argues that any statements that she made to her psychotherapist, if not protected by the judicial proceedings privilege, are conditionally privileged.  Def.'s Reply to Pl.'s Obj. to Def.'s Mot. for Summ. J.  8 n. 7.  The record is not sufficient for me to determine whether Christie had a judicial proceedings privilege for those statements and it is not necessary to address at this juncture whether Christie enjoyed a conditional privilege for them, see Rice v. Alley, 791 A.2d 932, 936 (Me. 2002), or whether Christie's statements are privileged under the Federal Rules of Evidence (and if so, whether she has waived that evidentiary privilege).

Def.'s Mem. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) 8-10 (ECF No. 30). She argued also that it was a compulsory counterclaim to her 2009 lawsuit, and that Lynch's failure to raise it then barred it in this lawsuit. Id. at 10-11. Lynch responded to these arguments, saying that his defamation claim was based "not upon *any* of Christie's statements made during and for the purpose of the 2009 lawsuit which might be found published within a pleading, motion, or otherwise." Pl.'s Resp. in Opp'n re Mot. to Dismiss. Pl.'s Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) 8 (ECF No. 35). He focused on the webpage publications, pointing out that they came after the earlier lawsuit terminated, and said that his defamation claim "is *mainly* predicated upon Christie's statements published on [the websites] at the earliest, in January 2011." Id. at 9 (emphasis added). In other words, the parties did not discuss individual statements apart from the judicial proceedings privilege and apart from the websites. In my Order denying the motion to dismiss, I described the issue the way the parties had framed it and said that "[t]he defamation claim was not a compulsory counterclaim in the earlier lawsuit because the web-based statements that Lynch claims were defamatory had not even occurred when the earlier lawsuit was dismissed with prejudice." Decision and Order on Mots. to Dismiss Am. Compl. 15.

Now, Christie argues that I should hold Lynch to what Christie believes was Lynch's earlier exclusive focus on the internet defamation. Although the record shows understandable confusion among us all on this topic, I see no reason at this point to preclude Lynch's other defamation claims, apparently based upon alleged statements by Christie that are neither protected by the judicial proceedings privilege nor website publications. In the earlier motion practice Lynch was responding to Christie's arguments; neither party talked about Christie's defamatory communications to others apart from the lawsuit and the internet. These other statements, however, were

adequately pleaded in the First Amended Complaint,[13] there has been full discovery on such statements (much of the evidence came out in depositions), and I see no prejudice to Christie in allowing this to be litigated.  If some of the statements were in fact made before Lynch filed his Answer in the previous lawsuit, then I may conclude that they cannot be pursued because they were compulsory counterclaims.[14]  But they might still be admissible in evidence to provide the contextual proof that others (other than Graves, Sobczak, and Graves's girlfriend) would understand Christie's website materials to be "of and concerning" Lynch.

Finally, the "actual injury" requirement of 14 M.R.S.A. § 556, Maine's anti-SLAPP statute, does not bar Lynch's defamation claims.  In Nader, Maine's Law Court clarified that under the anti-SLAPP statute, the nonmoving party (here Lynch) need only provide "prima facie evidence" to meet his burden of proof to avoid dismissal—i.e., "'some evidence' that the defendant's petitioning activity was devoid of factual or legal support and caused actual injury."  41 A.3d at 562.  In denying Christie's earlier motion to dismiss under section 556, I held that Lynch met even more stringent burdens of proof than this.[15]   Nothing has changed in that regard.   Lynch's expenditure of $290 for counseling after Christie published her allegations on the

---

[13] Christie cites Veilleux v. Nat'l Broad. Co., 8 F. Supp. 2d 23, 35 (D. Me. 1998), and its quotation from earlier cases that "[i]n pleading an action for defamation, the allegations of the complaint must afford defendant sufficient notice of the communications complained of to enable him to defend himself," and other references to the need to know the "precise language" so as to defend against the accusation of defamation.  Here, the dispute is over whether Christie falsely accused Lynch of sexual assault.  There is no doubt of the content of the asserted statements, and Christie is able to defend herself against the accusation.

[14] Under Fed. R. Civ. P. 13(a)(1), "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."  I do not address at this time whether counterclaims arising from statements made before Lynch filed his Answer are barred even if Lynch did not know of the statements at the time he filed his Answer.

[15] I held that Lynch met all burdens of proof except the "converse summary judgment" standard.  Decision and Order on Mots. to Dismiss Am. Compl. 12.  The Law Court repudiated that more stringent standard in Nader, 41 A.3d at 561-63.

Internet represents a "reasonably certain monetary valuation of the injury [he] has suffered." Schelling v. Lindell, 942 A.2d 1226, 1231 (Me. 2008). Contrary to Christie's arguments, Def.'s Reply to Pl.'s Obj. to Def.'s Mot. for Summ. J. 11-12, that amount is based upon an actual emotional injury cognizable under section 556, not presumed or per se damages. A false accusation that a health care provider sexually assaulted a patient is far different than the "rough and tumble of words related to governing and politics" found insufficient in Schelling, 942 A.2d at 1233. Such an accusation is not an "event[ ] of every day life," and Lynch has introduced evidence of more than just "hurt feelings" in the wake of the allegations. Id. Certainly Christie presents a good deal of evidence to suggest that over time Lynch has dealt successfully with the accusations, but weighing the depth of the injury and its duration will be a matter for the jury. Accordingly, I deny Christie's motion under the anti-SLAPP statute.

### *Wrongful Use of Civil Proceedings*

Under Maine law, the tort of wrongful use of civil proceedings

> exists where (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought.

Pepperell Trust Co. v. Mountain Heir Fin. Corp., 708 A.2d 651, 656 (Me. 1998). Christie argues that Lynch fails the second element because he "cannot identify facts that, if proved, would establish that the 2009 Lawsuit was brought primarily to annoy, harass, or otherwise affect Lynch in a way not commensurate with the proper adjudication of Christie's claims." Def.'s Mot. for Summ. J. 20.

I deny Christie's motion for summary judgment on this count for largely the same reasons I denied her earlier motion to dismiss the count. See Decision and Order on Mots. to Dismiss Am. Compl. 16-17. As I stated in that earlier order,

"Christie has not cited any caselaw holding that Lynch is required to identify *the* primary improper purpose Christie had, rather than prove the negative, that proper adjudication was *not* her primary purpose." <u>Id</u>. Regardless of whether Lynch remains at a loss to identify Christie's *exact* improper purpose in bringing an allegedly wrongful lawsuit, he has introduced sufficient evidence for a jury to conclude that Christie's purpose, even if ultimately inscrutable, was at any rate not a proper one. To reach such a conclusion in this case would be far more than, as Christie claims, to "simply infer from a favorable termination of the prior lawsuit that the prior lawsuit was brought for an improper purpose." Def.'s Mot. for Summ. J. 18. Christie's voluntary dismissal of her lawsuit with prejudice shortly before trial is only one of many pieces of evidence from which a jury could conclude that the alleged sexual assault never occurred. Christie's account of the assault is severely undermined by the testimony of multiple witnesses within earshot who never heard the screams she claims to have made; by reports from the same witnesses and office records showing that instead of running out of the office, Christie made—and ultimately kept—another appointment with Lynch; by the Cumberland County District Attorney's Office declining to pursue charges against Lynch after investigation by the South Portland Police Department; and by the Maine Board of Chiropractic Licensure's rejection of Christie's charges. This evidence is more than sufficient to raise genuine questions as to whether the alleged sexual assault ever occurred, and thus whether Christie's lawsuit was brought for an improper purpose. <u>See</u> Restatement (Second) of Torts § 676 cmt. c (1977) ("[I]nstituting a civil proceeding when one does not believe his claim to be meritorious is not acting for the purpose of securing the proper adjudication of his claim. . . . He cannot believe that the claim is meritorious . . . if he knows that it is a false one . . . .").

CONCLUSION

For the foregoing reasons, I DENY the defendant's motion for summary judgment (including the portion that actually seeks dismissal).

SO ORDERED.

DATED THIS 20TH DAY OF NOVEMBER, 2012

/s/D. Brock Hornby
D. BROCK HORNBY
UNITED STATES DISTRICT JUDGE

14